# United States Bankruptcy Court

# District of Massachusetts

_____
                                     )
In re:                               )
                                     )   Chapter 7
SALIENCE ASSOCIATES, INC.,  )   Case No. 03-44142-HJB
                                     )
            Debtor.                  )
_____)
                                     )
TALI A. TOMSIC, Chapter 7   )
Trustee,                             )
                                     )   Adversary Proceeding
            Plaintiff,               )   No. 05-4172
                                     )
            v.                       )
                                     )
SALES CONSULTANTS OF         )
BOSTON, INC.                         )
                                     )
            Defendant.               )
_____)

## MEMORANDUM OF DECISION

Before the Court is a Motion for Summary Judgment, filed by the Defendant, Sales

Consultants of Boston, Inc. ("SCB"). The motion is opposed by the Plaintiff, Tali A. Tomsic

as Chapter 7 trustee of Salience Associates, Inc. (the "Trustee"; the "Debtor").   The

Trustee's complaint seeks to avoid various transfers made by the Debtor to SCB within one

year of the filing of the Debtor's bankruptcy petition and also seeks payment for obligations

that she alleges are owed to the Debtor by SCB.[1]

---

[1] Because the instant bankruptcy case was filed in 2002, statutory amendments
subsequently made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
("BAPCPA") are not applicable here.  Unless otherwise noted, all statutory references are to Title
11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code") as in effect in
the year 2002.

## I.   FACTS & TRAVEL OF THE CASE

Prior to filing its Chapter 7 bankruptcy petition, the Debtor was a professional sales

outsourcing company that provided sales teams and market launching services to other

companies.  SCB provides full-service staffing solutions for domestic and international

companies.  The Debtor was one of its customers.  At all times relevant to the instant

Motion for Summary Judgment, Robert G. Stockard ("Stockard") served as the president

of both SCB and the Debtor.  SCB routinely procured employees for the Debtor in

exchange for a fee, which was calculated as a percentage of the annual salary of the

placed employee.[2]  The Debtor also sublet a portion of its office space in Andover,

Massachusetts to SCB.

The Debtor filed the instant Chapter 7 bankruptcy case on July 14, 2003.  During the

one-year period prior to the date of case commencement, the following transfers were

made from the Debtor to SCB (collectively, the "Transfers"):

> 1.   $7,000.00 on July 29, 2002
> 2.   $2,000.00 on September 3, 2002
> 3.   $30,000.00 on November 1, 2002
> 4.   $18,000.00 on November 1, 2002
> 5.   $6,250.00 on December 31, 2002
> 6.   $12,500.00 on January 2, 2003
> 7.   $20,000.00 on January 13, 2003
> 8.   $18,125.00 on January 21, 2003
> 9.   $3,125.00 on February 11, 2003
> 10.   $42,600.00 on March 10, 2003
> 11.   $22,750.00 on April 9, 2003
> 12.   $26,400.00 on April 22, 2003
> 13.   $45,000.00 on May 2, 2003

---

[2] According to an affidavit submitted by Richard Clark (the "Clark Affidavit"), the former Chief Financial Officer of the Debtor, the maximum fee to the Debtor was twenty percent (20%), but was oftentimes reduced due to volume discounting.  The payment structure between SCB and the Debtor is not in dispute.

14.   $35,000.00 on June 16, 2003
15.   $1,000.00 on September 6, 2003[3]

As part of their sublease arrangement, the Debtor and SCB shared some expenses,

such as those related to insurance and the telephone system, for which the Debtor was

reimbursed on a monthly basis by SCB.  The Trustee claims that the amounts owed to the

Debtor for the months of April through July of 2003, including those for rent, were unpaid.

SCB disagrees.

On July 13, 2005, the Trustee filed the instant complaint, seeking to avoid each of

the Transfers and seeking payment for the debts allegedly owed to the Debtor by SCB.

After answering, SCB filed its Motion for Summary Judgment, denying all counts of the

Trustee's complaint and setting forth affirmative defenses to the § 547(b) preference

claims, relying on § 547(c)(1)( and (2).   The Trustee filed her opposition to Stockard's

Motion for Summary Judgment, but did not append any affidavits or any other evidence in

support.  After hearing, the matter was taken under advisement.

## II.   POSITIONS OF THE PARTIES

### A.   The Trustee

The Trustee maintains that SCB is an "insider" of the Debtor, given the fact that

Stockard served as the president of both companies at all times relevant to the Transfers.

---

[3] This Court questions whether the $1,000.00 September 6th payment was made in 2002
or 2003.  The Trustee does not raise § 549 or raise any other issue relative to a post-petition
transfer in her complaint and it may be that the reference to the year 2003 is a typographical error
overlooked by the parties.  In any event, the actual date of that transfer does not control the
disposition of the instant Motion for Summary Judgment.

Accordingly, the Trustee seeks to avoid, pursuant to § 547(b),[4] all of the Transfers that took

place within one year of the date of case commencement.

The Trustee has a further theory as to some or all of the Transfers.  She claims that

the Debtor should not have been obligated to pay full commissions to SCB for long-term

employees when their employment was known to be short-term.  Accordingly, the Trustee

argues that, at a time of its insolvency, the Debtor failed to receive reasonably equivalent

value for the Transfers - which renders them fraudulent transfers recoverable pursuant to

§ 548(a)(1)(B)[5] and M.G.L. c. 109A § 5(a)(2).[6]   Finally, the Trustee maintains that SCB

---

[4] Except as provided in subsection (c) of this section, the trustee may avoid any transfer
of interest of the debtor in property–

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before
> such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>> (A) on or within 90 days before the date of the filing of the
>> petition; or
>> (B) *between 90 days and one year before the date of the filing of the*
>> *petition, if such creditor at the time of such transfer was an insider*; and
> (5) that enables such creditor to receive more than such creditor would receive
> if–
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by
>> the provisions of this title.

11 U.S.C. § 547(b).  (Emphasis supplied).

[5] Prior to the enactment of BAPCPA, § 548(a) provided, in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any
> obligation incurred by the debtor, that was made or incurred on or within one year
> before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

>                          *   *   *

>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer
>> or obligation; and
>> (ii)(I) was insolvent on the date that such transfer was made or such

-4-

would be unjustly enriched if not required to fulfill its obligations to the Debtor for rent and

shared expenses incurred during the four months prior to the Debtor's bankruptcy case.

The foregoing claims are set forth in the Trustee's complaint, but in her opposition

to the Motion for Summary Judgment, the Trustee does little more than restate § 547(b) of

the Bankruptcy Code and remark that "[t]he Complaint and Answer provide evidence of the

elements of Section 547 of the Bankruptcy Code." She adds, however, that "[w]ith respect

to the rental payments and the defense of setoff, the documentation provided by [SCB]

contains no information concerning the nature of [] approximately $36,000.00 in payments

---

obligation  was incurred, or became insolvent as a result of such transfer or
obligation;
  (II) was engaged in business or a transaction, or was about to engage in
business or a transaction, for which any property remaining with the debtor
was an unreasonably small capital; or
  (III) intended to incur, or believe that the debtor would incur, debts that
would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(B).

[6] Chapter 109A of the Massachusetts General Laws provides, in relevant part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(2) without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor:

(I) was engaged or was about to engage in a business or a transaction for
which the remaining assets of the debtor were unreasonably small in relation
to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he
would incur, debts beyond his ability to pay as they became due.

M.G.L. c. 109A, § 5(a)(2).

[that SCB made to the Debtor]."  With respect to the § 547(c) defenses raised in SCB's

Motion for Summary Judgment, discussed infra, the Trustee first acknowledges that those

defenses are provided under § 547(c)(1) and (2), and then suggests that the Debtor had

not used the services provided by SCB prior to October of 2002 and that its use of SCB's

services cost the Debtor approximately $300,000.00 at a time when the Debtor was

insolvent.  She provides no further facts to support her opposition to the affirmative

defenses raised by SCB, and none under oath.


   **B.     SCB**

   SCB maintains that it is not an insider of the Debtor because, although Stockard was

president of each company, he did not control the Debtor.  In his affidavit submitted in

support of the Motion for Summary Judgment, Stockard contends that, at all relevant times,

the Debtor was controlled by a venture capital investor, Ticonderoga, Inc., with which he

was never affiliated.  He states that Ticonderoga controlled the Board of Directors (on

which he held only one of five seats), as well as the Debtor's policies and practices.

Stockard maintains that he had no authority to control the Debtor to the advantage of SCB

and that Ticonderoga mandated that any transaction between the two companies be

"market competitive and at arm's length."  SCB argues that because it - through its

connection with Stockard - had no control over the debtor, it is not an insider of the Debtor

and only the transfers that occurred within ninety days of the bankruptcy petition are at

issue for the purposes of § 547(b).

   In its Motion for Summary Judgment, SCB otherwise focuses not on the Trustee's

case under § 547(b), but on the affirmative defenses of contemporaneous exchange for

new value, pursuant to § 547(c)(1) (the "Contemporaneous Exchange Defense"), and

payment in the ordinary course of business, pursuant to § 547(c)(2) (the "Ordinary Course

of Business Defense").[7]   With regard to the Contemporaneous Exchange Defense, SCB

states that it was the parties' intention that the Debtor pay SCB for its staffing services

contemporaneously with SCB's procurement of new employees for the Debtor.   SCB

attached several invoices from SCB that contain the statement "Terms: Net *due and*

*payable on start date* to assume guarantee. Thank you."[8]   (Emphasis added).   SCB directs

this Court to various cases, including Tyler v. Swiss American Securities, Inc. (In re

---

[7] The Contemporaneous Exchange Defense precludes the avoidance of a transfer–

to the extent that such transfer was–

> (A)    intended by the debtor and the creditor to or for whose benefit
>        such transfer was made to be a contemporaneous exchange for
>        new value given to the debtor; and

> (B)    in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

Prior to the enactment of BAPCPA, the Ordinary Course of Business Defense precluded the
avoidance of a transfer-

to the extent that such transfer was –

(A) in payment of a debt incurred by the debtor in the ordinary course of business or
financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the
transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

[8] SCB provided invoices and copies of proofs of payment relevant to the April, May, and
June 2003 Transfers only.  The is no documentation relevant to the other twelve Transfers at issue,
including that which is dated September 6, 2003, discussed supra.

Lewellyn & Co., Inc.), 929 F.2d 424, 428 (8th Cir. 1991), which support its contention that

agreements between parties and prior course of dealing are acceptable evidence of "intent"

under § 547(c)(1).

SCB further maintains that the Transfers occurred contemporaneously "in fact" to

the placement of new employees ("new value") with the Debtor.  Without elaborating on the

specific dates of the "new value" *vis-a-vis* the dates of the Transfers, SCB cites Pine Top

Ins. Co. v. Bank of Am. Nat'l Trust & Savings Ass'n for the proposition that:

> The modifier "substantial" makes clear that contemporaneity is a flexible
> concept which requires a case-by-case inquiry into all relevant circumstances
> including, the intentions of the parties, reason for delay, nature of the
> transaction, intentions of the parties [sic], and possible risk of fraud.

969 F.2d 321, 328 (7th Cir. 1992).

Alternatively, SCB contends that the Ordinary Course of Business Defense protects

the Transfers from avoidance.  It states that SCB placed over 100 employees with the

Debtor over the course of five years and was paid a commission in each case, fifteen of

which being the Transfers.  SCB maintains that the Transfers were made according to the

subjective course of dealing between the parties and that they were consistent with

prevailing industry standards.

SCB devotes less energy to disputing the Trustee's fraudulent transfer and unjust

enrichment claims.  SCB relies on the Clark Affidavit, in which the affiant states that the

industry standard is to charge 20% of the placed employee's first-year salary.  Because

that is the rate that SCB charged the Debtor, SCB maintains that reasonably equivalent

value for the Transfers was provided.

And with regard to the allegation made by the Trustee that SCB owes the Debtor for unpaid rent, SCB again relies on the Clark Affidavit, in which the affiant states that rent for April and May of 2003 was paid, and that the remaining obligations that SCB owes the Debtor are more than offset by a $36,545.00 claim that SCB has against the Debtor's estate.[9]

## III.   DISCUSSION

### A.   The Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[10]  Where the moving party is the party who would bear the burden of proof at trial,[11] Rule 56 provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.

---

[9]The record is unclear as to the basis of that claim.

[10] Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056.

[11] SCB bears the burden of proof as to its affirmative defenses under § 547(c).  11 U.S.C. § 547(g).

Fed. R. Civ. P. 56(e).  (Emphasis supplied).  The First Circuit has interpreted this provision

to mean that while the absence of a genuine dispute as to a material fact is a necessary

prerequisite to a finding of summary judgment in favor of the movant, the lack of such a

dispute, without more, is not necessarily enough to require such a finding.  See Desmond

v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994) (characterizing the absence

of a material factual dispute as a "condition necessary," but not a "condition sufficient," to

summary judgment).  Accordingly, the burden is on the moving party to show that it is

*entitled to* judgment as a matter of law.  Id.

The court must view all facts and draw all reasonable inferences in favor of the

nonmoving party.  Id. at 763. But here, the nonmoving party has failed to attach affidavits,

depositions, answers to interrogatories, or any form of evidence whatsoever to her

response to the motion for summary judgment.  The Trustee's opposition effectively rests

on "mere allegations or denials of the adverse party's pleading" and has failed to "set forth

specific facts showing that there is a genuine issue for trial."  See, supra, Fed. R. Civ. P.

56(e).  Rule 56(e), then, requires that this Court grant summary judgment in favor of SCB,

but only "if appropriate."


### B.      "Insider" Status

The Bankruptcy Code defines an "insider" to include:

If the debtor is a corporation –

> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or

(iv) relative of a general partner, director, officer, or person in control
of the debtor. . .

11 U.S.C. § 101(31)(B). An "insider" also includes an "affiliate, or insider of an affiliate as

if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). And an "affiliate" is defined as

an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent

or more of the outstanding voting securities. . ." 11 U.S.C. § 101(2). The terms "'includes'

and 'including' are not limiting," 11 U.S.C. § 102(3); therefore, a party may be an insider

despite the fact that it may not fall into any of the *per se* definitions of an insider under §

101(31).

When faced with potential insider parties who do not fit into one of the *per se* insider

categories, courts will determine insider status based on a factual inquiry into the debtor's

relationship with the alleged insider. See Grossman v. Charmoy (In re Craig Sys. Corp.),

244 B.R. 529, 539 (Bankr. D. Mass. 2000). This typically requires an understanding of

whether, and to what extent, the alleged insider had the ability to control, or at least

"exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy

and the disposition of corporate assets." Gray v. Chace (In re Boston Publ'g Co., Inc., 209

B.R. 157, 169-70 (Bankr. D. Mass. 1997). However, something less than control or

authority may establish insider status, provided the alleged insider exercised "significant

influence" over the debtor. See Barnhill v. Vaudreuil (In re Busconi), 177 B.R. 153, 158

(Bankr. D. Mass. 1995) ("It would seem from [the *per se* definitions of an insider] that

Congress intended to include those whom the debtor looked kindly upon and those who have significant influence on the debtor even though not 'in control' of the debtor").[12]

Taking first the relationship between Stockard and the Debtor, Stockard claims that despite his role as President, he lacked control over the Debtor's policies and practices. He was only one of five Board members and the venture capitalist, Ticonderoga, Inc., owned eighty percent (80%) of the preferred stock of the Debtor.  He does not state the division of control amongst the members of the Board of Directors, nor does he describe the ownership of the remaining twenty percent (20%) of the preferred stock.  Based on the facts before this Court, it is *possible* that the remaining stock was owned by Stockard, which would qualify him as an affiliate, pursuant to § 101(2)(A), and SCB as an insider, pursuant to § 101(31)(E).[13]

Nor are there sufficient facts to adequately inform this Court as to the nature of the relationship between SCB and the Debtor.  Though Stockard swears that Ticonderoga mandated that all transactions between the Debtor and SCB be at arms length, that mandate does not address Stockard's control over the day-to-day operations of either the Debtor or SCB.  Constraints arising from Stockard's minority ownership position in the Debtor and/or from Ticonderoga's careful monitoring of his activities do not singly or together negate Stockard's ability to substantially influence or, in fact, control the activities

---

[12]It is worth noting that while the insider of an affiliate of a debtor is a *per se* insider of the debtor, the Code does not assign insider status, *per se,* to the insider of an insider of a debtor.

[13] The Trustee has filed a similar complaint against Stockard, seeking to recover an alleged preferential transfer that he received from the Debtor, which was for the repayment of a $99,990.00 loan that Stockard had personally advanced to the Debtor during the insider preference period. See Tomsic v. Stockard (In re Salience), - - B.R. - - (Bankr. D. Mass. 2007), A.P. No. 05-4171.  In this parallel adversary proceeding, Stockard does not dispute that he is, as the president of the Debtor at all times relevant to both of these adversary proceedings, an insider of the Debtor.

of either SCB or the Debtor.  Indeed, the notion that the president of a business corporation is not a principal decision-maker is counter-intuitive.  See, e.g., <u>Boston Athletic Ass'n v. Int'l Marathons, Inc.</u>, 392 Mass. 356, 365, 467 N.E.2d 58 (1984) ("Corporate officers are generally empowered, by delegation of authority of the board of directors, with general managerial functions. They are responsible for the day to day operation of the corporation. (Citing, <u>inter</u> <u>alia</u>, <u>Lydia E. Pinkham Med. Co. v. Gove</u>, 298 Mass. 53, 63, 9 N.E.2d 573 (1937))).  Accordingly, this Court finds that, because there are genuine disputes of material facts concerning Stockard's, and thus SCB's, control over the Debtor, summary judgment on the question of SCB's insider-status is not appropriate.

### C.      The Affirmative Defenses[14]

#### I.      The Contemporaneous Exchange Defense

In short, the Contemporaneous Exchange Defense requires that a creditor show *both* that the debtor and the transferee intended that the transfer be a contemporaneous exchange for new value *and* that the transfer was, in fact, a contemporaneous exchange. 11 U.S.C. § 547(c)(1).  There are genuine issues of material fact surrounding each of these elements in the case at bar.

---

[14] The Trustee's claims against Stockard, which were also brought under § 547(b), and his motion for summary judgment in response thereto, have been addressed by this Court in its Memorandum of Decision supporting the denial of that motion in <u>Tomsic v. Stockard (In re Salience Associates, Inc.)</u>, __ B.R. __ , 2007 WL 1893597, (Bankr. D. Mass. July 3, 2007).  The Court incorporates herein its rulings and the reasoning made there with respect to SCB's Contemporaneous Exchange and Ordinary Course of Business defenses made here; however, where the rationale may vary or require a more thorough analysis, this Court more elaborately enunciates its reasoning below.

As the Trustee noted, it is not clear whether the payment of a full commission for the

placement of new employees, when both the Debtor and SCB were aware of the Debtor's

fiscal deterioration, should be considered "new value."  The Bankruptcy Code defines "new

value" to include "money or money's worth in . . . services."  11 U.S.C. § 547(a)(2).  It is

certainly worth examining whether the Debtor received its money's worth of services for

most, if not all, of the employees placed by SCB during the year preceding the Debtor's

bankruptcy.   Furthermore, while the invoices appended to the Motion for Summary

Judgment - which establish the due date for payment to SCB as the start date of each

respective employee - appear to suggest the intention of a contemporaneous exchange,

the attached receipts reveal that payment was oftentimes not made until well after the

specified start dates of the new employees.  For example, with respect to the April 2003

Transfer, each of the three employees for whom the commission was paid were to start on

either the ninth or tenth of April.  The Transfer, in fact, occurred twelve or thirteen days later

on April 22, 2003.  As for the May 2003 Transfer, each of the twelve employees for whom

the commissions were paid were to start on April 17, 2003.  That Transfer, in fact, occurred

fifteen days later on May 2, 2003.[15]   The Court agrees with SCB that substantial

contemporaneity may be subject to a case-by-case determination.  But where, as here, the

obvious intent of the parties was for the Transfers be made on the very date that the

employees were to start working for the Debtor, but payment was not made until quite a

_____

[15] No receipt of payment was provided for the June 16, 2003 Transfer, and no
documentation whatsoever was provided for the Transfers prior to April 22, 2003. The Court cannot
address the earlier Transfers, as SCB,  basing its argument on the assumption that it was not an
insider, provided no documentation relative to the earlier Transfers.

-14-

few days, if not weeks, after those dates, SCB has not  established that it is entitled to judgment as a matter of law on its Contemporaneous Exchange Defense.

### ii.     The Ordinary Course of Business Defense

In order to prevail under § 547(b)(2) (as here applicable in form prior to the changes made by BAPCPA), SCB must show that the services it provided the Debtor were incurred in the ordinary course of business or financial affairs of the Debtor and SCB, that the Transfers were made in the same ordinary course, and that the Transfers were made according to the standard practices of the relevant industry.  The Clark Affidavit, in addition to the other documentation provided by SCB, sufficiently establishes the first two elements of the Ordinary Course of Business Defense.  There is little dispute that the Transfers were payments of commissions, and that such the obligation to pay those commissions were incurred in the ordinary course of dealings between the parties.[16]  However, with respect to the third element, the only evidence of objective industry practices is the affiant's statement that the payment of a twenty percent (20%) commission in return for a placed employee is standard.  Neither the standard timing of such payments nor, more importantly, whether industry standards dictate that full commission *always* be paid - despite the attendant circumstances surrounding the company at which the employee is to be placed - is revealed.  Accordingly, SCB has not demonstrated that it is entitled to judgment, as a matter of law, on its Ordinary Course of Business Defense under § 547(c)(2).

---

[16] SCB maintains that it placed employees with the Debtor for five years, while the Trustee submits that this had only been happening since October of 2002.  While § 547(c)(2) does not articulate a minimum time period during which the parties must have been dealing, if the Trustee is correct, the timing does raise issues of intent and credibility.

### D.        Fraudulent Transfers

Corollary to this Court's concerns in the context of "new value" and the Contemporaneous Exchange Defense, valid questions exist concerning whether the Debtor received "reasonably equivalent value" in exchange for the Transfers.    See § 548(a)(1)(B)(i).[17]   Payment of full commissions for the placement of employees with a company that SCB, through Stockard, likely knew or had reason to believe was on the verge of bankruptcy would have the favorable impact (for SCB) of drawing funds out of the Debtor's estate to the disadvantage of its other creditors.  The placement of Ted Jenkins as a "NSM for Metro"[18] illustrates the problem more so than the others, at least on the record now before the Court.  The evidence indicates that Jenkins was to start working for the Debtor on April 24, 2003, less than three months prior to the filing of its bankruptcy petition, and was to be compensated during his first year at a salary of $140,000.00.  The corresponding commission owed to SCB was $28,000.00 for this single employee.  It seems quite unlikely that the Debtor received reasonably equivalent value for the procurement of this employee in particular.  SCB has accordingly not demonstrated, as a matter of law, that is entitled to judgment in its favor on the Trustee's fraudulent transfer charge.

---

[17] To be clear, this analysis focuses not on whether there was any actual fraudulent intent on the part of either party, but rather on constructive fraud.  On January 17, 2006, this Court granted summary judgment in favor of SCB as to the intentional fraud count set forth in the Trustee's complaint.

[18] Presumably this means a National Sales Manager.  The position was abbreviated in the SCB invoice to the Debtor for Jenkins.

## E.     Unjust Enrichment

Section 550(a) states that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."  11 U.S.C. § 550(a).  However, § 550(a) does not create a right to setoff; rather it leaves intact the creditor's right to setoff under applicable nonbankruptcy law.  In re Pub. Serv. Co. of N.H., 884 F.2d 11, 14 (1st Cir. 1989).  The mutuality of debts requirement is generally considered satisfied where the creditor is directly obligated to the debtor and the debtor is, in return, directly obligated to the creditor, without the involvement of third-parties or fiduciary relations, id., see also 5 Collier on Bankruptcy, ¶ 553.03[3] (15th ed. 2007) - provided, of course, that all debts involved in the setoff arose prior to the commencement of the bankruptcy case.  11 U.S.C. § 553(a).

The record before the Court does not adequately describe the nature of the obligations owed by SCB to the Debtor, alleged by the Debtor to be in the amount of $30,000.00.  And the parties dispute whether rent was paid for the months of April and May of 2003.  In the  Clark Affidavit, the affiant swears that rent for those two months was paid, but Exhibit C to his affidavit, which is supposed to be the record of the April payment, is entirely indecipherable; however, there does appear to be evidence of the May payment.

Furthermore, as discussed supra, SCB claims that the Debtor still owes SCB an outstanding debt of $36,545.59, which is the amount that the Debtor listed as owing to SCB in its Schedule F and Statement of Financial Affairs.  While Schedule F characterizes this

obligation as "Trade Debt," if this Court were to find that its source was the nonpayment of commissions, the Court would again be drawn into the question as to whether the Debtor should have been paying full commissions for all, or any, of the employees placed during the year prior to its bankruptcy and whether this claim should be disallowed or allowed in full or in part - certainly a necessary pre-condition to SCB's claimed right of setoff, if any. 11 U.S.C. § 553(a)(1).   Again, genuine issues of material fact preclude an award of summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, SCB's "Motion for Summary Judgment" is DENIED.

A separate Order in conformity with this Memorandum of Decision shall issue forthwith, which Order shall also schedule a further pre-trial conference.

By the Court,

DATED:      July 6, 2007        _____
                               Henry J. Boroff
                               United States Bankruptcy Judge